IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00199-CYC

KENNETH M. CHANDLER,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

# ORDER

---

**Cyrus Y. Chung, United States Magistrate Judge.**

    Generally, the doctrine of sovereign immunity precludes a person's suit against the government for money damages. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671–2680, constitutes a limited waiver of that immunity for the government's commission of state-law torts. But the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126, forecloses invocation of the FTCA for prison inmates who suffer work-related injuries. Plaintiff Kenneth M. Chandler, a participant in the Bureau of Prisons' Federal Inmate Dog Obedience School ("FIDOS"), suffered such an injury. Accordingly, defendant United States of America's motion to dismiss for lack of subject-matter jurisdiction, ECF No. 18, is **GRANTED**. Because no conversion to summary judgment or evidentiary hearing is necessary to decide the issue, **t**he plaintiff's procedural motions, ECF Nos. 22, 23, are **DENIED**.

## BACKGROUND

    For purposes of this motion, in which the defendant makes a factual jurisdictional attack, "a district court has 'wide discretion to allow affidavits, other documents, and a limited

evidentiary hearing to resolve disputed jurisdictional facts.'" *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).

According to those documents, as well as the complaint, the plaintiff is an inmate at FCI Englewood, where he participated in the prison's dog training program. ECF No. 1 ¶ 1. The dog training program was established in November 2022 as a partnership between the Bureau of Prisons (the "BOP") and Dancing Dog Rescue and Recovery Ranch, Inc. ("Rescue"), a non-profit organization in Commerce City. ECF No. 24-1 at 13; *see* Declaration of Amanda Vargas ¶ 6, ECF No. 24-1 ("Vargas Decl."). Through that partnership, BOP and Rescue sought "to establish an inmate training/work program at FCI Englewood for the care and training of certain dogs with the intention that the Program will minimize inmate idleness during incarceration, assist inmates in preparing for employment and successful reintegration upon release, and fulfill the training, service, and research mission of the Program." ECF No. 24-1 at 14. "Participating inmates" were to "be paid solely by BOP at BOP's sole discretion to consider this Program a work assignment." *Id.* at 15. The agreement between BOP and Rescue indicated that inmates injured in the program had the "sole exclusive remedy against the United Stated [sic]" of pursuing compensation under the IACA "for injuries caused by or related to inmate work assignments." *Id.* at 17.

In February 2023, the dog training program became FIDOS. Vargas Decl. ¶ 8. Inmates desiring to participate in FIDOS must apply. *Id.* ¶ 9. The plaintiff did so on April 24, 2024. ECF No. 24-1 at 7. He subsequently underwent an interview, *id.* at 10, and was accepted as a Dog Orderly in the program on May 13, 2024. *See* Vargas Decl. ¶¶ 4, 12; Declaration of Jennifer

2

Owen ¶ 7, ECF No. 18-1 ("Owen Decl."). In June 2024, the plaintiff was paid $90 for his work as a Dog Orderly. Owen Decl. ¶ 8; ECF No. 18-1 at 28.

On the morning of June 20, 2024, the plaintiff was training his dog when a unmuzzled dog new to FIDOS bit him, resulting in injuries and emotional aftereffects. *Id.* ¶¶ 2–4. Three days later, the plaintiff filed an administrative claim under the FTCA, which the BOP denied. *Id.* ¶ 10. The plaintiff then filed this action on January 17, 2025, asserting a claim of negligence against the United States through the FTCA. *Id.* at 3–4.

The parties consented to the jurisdiction of a magistrate judge, ECF Nos. 14, 15, and these motions followed.

## ANALYSIS

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff, as "the party asserting jurisdiction," bears the burden of establishing subject matter jurisdiction. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). A party contending that a federal court lacks subject matter jurisdiction can seek dismissal under Federal Rule of Civil Procedure 12(b)(1). *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003). The moving party may so seek in two ways: (1) facial attack or (2) factual challenge. *Equal Emp. Opportunity Comm'n v. 'Murica, LLC*, 694 F. Supp. 3d 1356, 1361 (D. Colo. 2023). "A factual attack," like that the defendant wages here, "goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020).

Here, the United States contends that sovereign immunity divests the Court of jurisdiction. The doctrine embodies the "established principle of jurisprudence, in all civilized nations, that the sovereign cannot be sued in its own courts, or in any other, without its consent

3

and permission." *United States v. Lee*, 106 U.S. 196, 235 (1882). "Absent a waiver," then, "sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The doctrine "is jurisdictional in nature." *Id.* Thus, "the government is not liable to be sued, except with its own consent, given by law." *United States v. McLemore*, 45 U.S. (4 How.) 286, 288 (1846).

The FTCA represents one such instance of consent: it "waived the United States' sovereign immunity for claims arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18 (2008). But because workers' compensation laws are presumed to be exclusive remedies, and because the IACA is such a law, where an inmate's claim falls under the IACA, his FTCA remedy — and the government's limited waiver of sovereign immunity accompanying it — is foreclosed. *See United States v. Demko*, 385 U.S. 149, 152 (1966); *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009). Thus, when an inmate's injury is "work-related and compensable under" the IACA, a district court "lack[s] jurisdiction to adjudicate the . . . claim under the Federal Tort Claims Act." *Thompson v. United States*, 495 F.2d 192, 193 (5th Cir. 1974); *see Arbuckle v. United States*, 523 F. App'x 502, 503 (10th Cir. 2013); *Sandoval v. United States*, No. CV 17-3092 DMG (SKX), 2021 WL 3124949, at *1 (C.D. Cal. July 23, 2021) (collecting cases holding that the IACA presents a jurisdictional hurdle).

There is a preliminary matter to address. Consideration of the documents the defendant attached to its motion and reply, the plaintiff says, would require converting this motion to one for summary judgment. ECF No. 22 at 3–4. It does not. "When," as here, "a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Baker*, 979 F.3d at 872

(quoting *Stuart*, 271 F.3d at 1225). Thus, "[a]s a general rule, a 12(b)(1) motion may *not* be converted into a Rule 56 motion for summary judgment." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 654 (10th Cir. 2002). To be sure, "if 'resolution of the jurisdictional question requires resolution of an aspect of the substantive claim,' reference to evidence outside of the pleadings converts the motion to one under Rule 56." *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.* 259 F.3d 1244, 1249 (10th Cir. 2001) (quoting *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000) (per curiam)) (citation removed). But the merits here are the plaintiff's allegations that his injuries were caused by the defendant's negligence. ECF No. 1 at 5. Analyzing FIDOS's nature does not require evaluating those allegations. Thus, because "resolution of the jurisdictional question" does not require "resolution of an aspect of the substantive claim," the Rule 12(b)(1) motion need not be converted into a Rule 56 motion for summary judgment to consider the defendant's submitted materials. *Coal. for Sustainable Res., Inc.*, 259 F.3d at 1249. There is no reason, then, to strike the documents as the plaintiff suggests.

He also complains briefly that the attachments to the Owen Declaration are unauthenticated. ECF No. 22 at 2–3. But he does not elaborate on this plaint, and it is not immediately obvious what he means. The declaration uses those attachments to support the statements made therein and identifies what they are. *See* Owen Decl. ¶¶ 2, 6–8. It is unclear what more the plaintiff thinks is needed for the Court's consideration.

Turning to the merits, the plaintiff's injury falls under the IACA. That statute grants "compensation to inmates or their dependents for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institution in which the inmates are confined." 18 U.S.C. § 4126(c)(4).

5

The plaintiff's FIDOS assignment was "work activity." The plaintiff had regular hours. *See* Decl. of Kenneth M. Chandler ¶ 11, ECF No. 24 ("Chandler Decl."). He signed a contract committing to FIDOS for two to three months. ECF No. 21-1 ¶ 6. That contract also outlined a series of responsibilities. *Id.* ¶¶ 1–38. The plaintiff was paid for his work. Owen Decl. ¶ 8; *see* Vargas Decl. ¶ 11. Such circumstances demonstrate that FIDOS was a work assignment. *See Grimm v. United States*, No. 3:18-CV-00431-JR, 2019 WL 2296726, at *3 (D. Or. Apr. 25, 2019), *report and recommendation adopted*, 2019 WL 2291464 (D. Or. May 29, 2019).

It was also one "in connection with . . . the operation of the institution." 18 U.S.C. § 4126(c)(4). FIDOS "offers mutual rehabilitation, teaching participants responsibility, job skills, and purpose . . . leading to lower recidivism." Supp. Decl. of J. Spencer ¶ 11, ECF No. 30-1 ("Spencer Decl."). And reducing recidivism is one task assigned to the Bureau of Prisons. *See, e.g.*, 18 U.S.C. § 3621(h) (directing the expansion of "effective evidence-based recidivism reduction programs"). FIDOS also "contributes to the orderly operation of the institution by reducing inmate idleness and keeping participating inmates constructively occupied," making them "less likely to engage in institutional misconduct." Spencer Decl. ¶ 14. That, too, connects it with the operation of the institution.

To be sure, such associations are broad. Most, if not all, prison work assignments would be "connected" to the operation of the institution in the same ways. Indeed, the defendant admits that it is unaware of any work assignment not falling under IACA's umbrella, Spencer Decl. ¶ 8, raising a question of whether such a broad interpretation of "operation" runs counter to the principle that a court is "to give meaning to every word of a statute where possible." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1165 (10th Cir. 1999). But the statute's breadth appears to have been part of Congress's design. The relevant language was added in 1961, Act of Sept. 26,

1961, Pub. L. No. 87-317, 75 Stat. 681, and the accompanying legislative history indicates that its purpose was to "afford[] equal treatment to all prisoners who may be injured in the course of employment while confined." S. Rep. No. 87-1056 (1961), *as reprinted in* 1961 U.S.C.C.A.N. 3028, 3029. Prior to the addition of the language in question, worker's compensation through IACA had been limited to those employed by Federal Prison Industries; the 1961 amendment was designed to "eliminate this discriminatory difference in treatment" by extending the IACA to prison work assignments more generally. *Id.* Given that the amendment had this broadening purpose, it is unsurprising that a given prison might not have a work assignment that falls outside the IACA's scope.

The plaintiff resists this conclusion. FIDOS is "voluntary," but BOP work assignments, he says, are compulsory. ECF No. 21 at 2; Chandler Decl. ¶ 10. After all, the BOP's own regulations indicate that "[d]isciplinary action may be taken against an inmate who refuses to work," running counter to the idea that anything voluntary could so qualify. 28 C.F.R. § 545.24(c).

But the attack rests on a shaky premise. FIDOS is only "voluntary" in the sense that inmates seeking to participate in it "must apply and are interviewed for the position." Vargas Decl. ¶ 9. Once in the program, a failure to follow its regulations results in consequences, including extra duties and expulsion from the program. ECF No. 21-1 ¶ 2. Entering FIDOS, therefore, is voluntary; once in the program, the work itself is not.

Next, the plaintiff attempts to characterize FIDOS as a vocational education program, not a work assignment, ECF No. 21 at 4, noting that BOP regulations distinguish "vocational training" from a "work program." 28 C.F.R. § 545.20. And courts have found on occasion that "participation as a student in a vocational . . . class was not an 'industry' or a 'work activity in

7

connection with the maintenance or operation' of the prison in which [the inmate] was incarcerated." *Batista v. United States*, No. CV 16-794 (PJS/DTS), 2017 WL 3190648, at *6 (D. Minn. June 9, 2017), *report and recommendation adopted*, 2017 WL 3190563 (D. Minn. July 26, 2017). But these have been cases in which "the government generally failed to meet its evidentiary burden" of showing characteristics of a work assignment. *Grimm*, 2019 WL 2296726, at *3. Here, the defendant has shown an application and interview process, regular work hours, contractual responsibilities, and compensation. That evidence points to the defendant working in FIDOS, notwithstanding any labels, *see* ECF No. 28, that otherwise might point to a contrary conclusion. *See Grimm*, 2019 WL 2296726, at *1, *3–5 (finding IACA applicability for Apprentice Program which had a "Vocational Training Instructor" and "categorized plaintiff as a 'volunteer'").

The plaintiff also suggests that FIDOS's work-program status is a post-hoc concoction of a BOP employee new to FIDOS. ECF No. 21 at 2–3; Chandler Decl. ¶¶ 7–8. But the basis of his suggestion is his own "information and belief," Chandler Decl. ¶ 7, as opposed to any personal knowledge and, in all events, the defendant submitted an additional similar declaration on the point from an employee associated with FIDOS for a longer time. *See* Vargas Decl. ¶¶ 1–3, 8.

The plaintiff's injury was also one "suffered in" his work activity. Each dog in FIDOS is assigned to two handlers and, on the date in question, the plaintiff was pressed into service because the other handler of his dog was unavailable. Chandler Decl. ¶ 12. That extra shift with the dog was one of the plaintiff's contractual responsibilities under FIDOS. *See id.*; ECF No. 21-1 ¶ 27. The incident occurred in the "FIDOS training area." Chandler Decl. ¶ 11. Such evidence shows that the plaintiff suffered a work-related injury. *See Grimm*, 2019 WL 2296726, at *5.

The plaintiff protests. His regular shift, his thesis runs, began at noon, but this injury occurred earlier because he was covering another FIDOS trainer's shift. ECF No. 21 at 3; Chandler Decl. ¶ 11. And "work-related injuries," according to BOP regulations, "ordinarily includes only those injuries suffered during the performance of an inmate's regular work assignment." 28 C.F.R. § 301.301(b). But "[a]lthough 28 C.F.R. § 301.301(b)" so "provides . . . [,] an agency interpretation of a statute 'cannot run contrary to Congress's intent as reflected in a statute's plain language and purpose.'" *Martinez v. United States*, No. CV 19-21102 (RMB-AMD), 2023 WL 6307441, at *7 (D.N.J. Sept. 27, 2023) (quoting *Madison v. Res. For Hum. Dev., Inc.*, 233 F.3d 175, 187 (3d Cir. 2000)). Thus, "[s]pecial work assignments that constitute 'any work activity in connection with the maintenance or operation of the institution in which the inmates are confined' also fall within the statute." *Id.* (quoting 18 U.S.C. § 4126(c)); *see Rodriguez v. United States*, No. 4:22-CV-1735, 2024 WL 4341347, at *6 (M.D. Pa. Sept. 27, 2024) (finding that the IACA applied where "Plaintiff was 'made,' by a BOP employee, to work as an AM, as opposed to PM, cook on the date he was injured"). This is not, for example, a case where the evidence indicates that the inmate "had finished her work assignment earlier in the day . . . and that a different inmate was assigned to work at the time of her accident." *Codianni-Robles v. United States*, No. 3:04-CV-1725(JCH), 2005 WL 2098837, at *2 (D. Conn. Aug. 29, 2005). The incident's timing outside of the plaintiff's regular shift does not preclude IACA application.

Finally, the plaintiff complains that he did not receive a copy of a BP-140 form, and the lack of such a form is indicative of his injury not being work-related, given that BOP regulations contemplate the form being filled out for such injuries. ECF No. 21 at 5 (citing 28 C.F.R. § 301.202(a)). It appears, though, that one was completed, Vargas Decl. ¶¶ 12, 15; ECF No. 24-1

9

at 27–30, and, in all events, the lack of provision of that form to the plaintiff does not alter the calculus of whether the injury was work-related. *See Uptegrove v. United States*, No. 16 CIV. 7027 (PED), 2018 WL 11187138, at *4 n.1 (S.D.N.Y. May 30, 2018).

In short, the defendant's assignment in FIDOS had the trappings associated with work. His injury in that assignment is therefore subject to IACA, depriving a federal court of jurisdiction to decide his claim.

There is a final matter to address. The plaintiff moves for an evidentiary hearing pursuant to Federal Rule of Civil Procedure 12(i). ECF No. 23. That rule states that, if a party so moves, a Rule 12(b) defense "must be heard and decided before trial unless the court orders a deferral until trial." Fed. R. Civ. P. 12(i). But "[b]eing 'heard' does not equate to an evidentiary hearing or oral hearing on [a] motion." *Tracy v. Weber Cnty.*, No. 1:23-CV-90 DBP, 2023 WL 6916713, at *1 (D. Utah Oct. 19, 2023) (citing *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998)). And "[d]ue process does not require an oral hearing"; instead, "a district court has discretion to decide a motion to dismiss without one." *Frischenmeyer v. Werholtz*, 459 F. App'x 759, 761 (10th Cir. 2012).

Here, the plaintiff suggests that that such a hearing may aid in deciding the jurisdictional question. ECF No. 23 at 2–3. But the record establishes sufficient facts to make such a determination. Under such circumstances, no evidentiary hearing is required.

## CONCLUSION

For the foregoing reasons, defendant United States of America's Motion to Dismiss, ECF No. 18, is **GRANTED**. It is hereby ORDERED that the Complaint, ECF No. 1, be **DISMISSED without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

It is further ORDERED that the plaintiff's Motion to Strike Declaration and Attachments to Defendant's Rule 12(b) Motion to Dismiss, ECF No. 22, is **DENIED**.

It is further ORDERED that the plaintiff's Motion for Rule 12(i) Evidentiary Hearing on Jurisdiction, ECF No. 23, is **DENIED.**

DATED this 13th day of January, 2026, at Denver, Colorado.

BY THE COURT:

_____

Cyrus Y. Chung
United States Magistrate Judge